UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

GARY LINSEY SLATER, )
)
    Petitioner, ) Civil Action No. 0:11-CV-086-HRW
)
V. )
) **MEMORANDUM OPINION**
J. C. HOLLAND, Warden, ) **AND**
) **ORDER**
    Respondent. )

        \*\*    \*\*    \*\*    \*\*    \*\*

Gary Linsey Slater, a federal prisoner formerly incarcerated in the Federal Prison Camp in Ashland, Kentucky ("FCI-Ashland"), but presently incarcerated in the Federal Correctional Institution in Petersburg, Virginia ("FCI-Petersburg"), has submitted a habeas corpus petition, filed pursuant to 28 U.S.C. § 2241, and has paid the district court filing fee. The matter is now before the Court for screening.[1] 28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing

---

[1] Slater's transfer to FCI-Petersburg after the filing of this § 2241 habeas petition is of no consequence. The court's jurisdiction is established at the time of the initial filing of the habeas corpus petition and is **not** destroyed by a petitioner's later transfer to another institution or custodial change. *United States v. Gabor*, 905 F.2d 76, 78 (5th Cir. 1990); *McClure v. Hopper*, 577 F.2d 938, 939-40 (5th Cir. 1978); *Monroig v. Craig*, 5:08-cv-00058, 2010 WL 890974 (S.D.W.Va. 2010) (citing *Francis v. Rison*, 894 F.3d 353, 354 (9th Cir. 1990). Thus, this court retains jurisdiction to entertain Slater's § 2241 habeas petition.

*Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

This is a *pro se* petition and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983).

For the reasons set forth below, Slater is not entitled to relief under § 2241. His habeas petition will be denied and this proceeding will be dismissed.

## CLAIMS AND RELIEF SOUGHT

Slater alleges that his due process rights guaranteed under the Fifth Amendment of the United States Constitution were violated by his being charged in an Incident Report with the use of any narcotic not prescribed to him by medical staff, a Code 112 violation, and being convicted of that charged offense in a disciplinary proceeding which transpired at FCI-Ashland on March 9, 2010, resulting in the imposition of the following sanctions: (1) the loss of forty-one (41) days of Good Conduct Time ("GCT") credit on his sentence; (2) 60 days of Disciplinary Segregation, (3) 6 months' loss of Visiting Privileges, followed by 6 months' Immediate Family Members Only Visiting Privileges. Slater seeks the expungement

of the disciplinary charge, restoration of the loss of 41 days GCT credit on his sentence, and an Order that the BOP restore him to same position he enjoyed prior to the charged offense and conviction, *viz.,* placement at a prison camp.

## ALLEGATIONS OF THE PETITION
### 1. Disciplinary Charge and Conviction

Prior to his being confined at FCI-Ashland, Slater was an inmate at the United States Penitentiary - Big Sandy ("USP-Big Sandy"), in Inez, Kentucky. For reasons unknown to the Court, on December 17, 2009, Slater was placed in segregation at USP-Big Sandy, and prison staff requested that he provide a urine sample at that time. On December 30, 2009, USP-Big Sandy prison officials received a toxicology report noting that Slater's urine sample tested positive for Codeine. In the interim, Slater was transferred to FCI-Ashland on or about December 22, 2009; thus, by the time USP-Big Sandy prison officials received the toxicology report and learned of this violation, Slater had been transferred to FCI-Ashland.

The Incident Report at issue charges that on December 17, 2009, while an inmate at USP-Big Sandy, Slater committed the prohibited act of using a narcotic not prescribed to him by medical staff, a Code 112 violation.[2] The Incident Report notes

---

[2] The various levels of BOP offenses are set forth in 28 C. F. R. § 541.13, Table 3. The most serious offenses ("Greatest Category") are listed in Code Nos.100-199; the next level of offenses ("High Category") are listed in Code Nos. 200- 299; the next level of offenses ("Moderate Category") are listed in Code Nos. 300-399; and the final and lowest

3

that prison staff became aware of the incident on December 30, 2009, at 2:10 p.m.; however, this Incident Report was not prepared until January 28, 2010, nearly one month after prison staff at USP-Big Sandy became aware of the alleged incident, and was not delivered to Slater until February 1, 2010.[3]

Slater had an initial hearing before the Unit Disciplinary Committee ("UDC") on February 11, 2010, ten days after his receipt of the Incident Report. The UDC referred the charge to the Disciplinary Hearing Officer ("DHO") for a hearing. The DHO hearing was held on March 9, 2010. In addition to the Incident Report and Investigation, the DHO considered the following evidence: (1) a Chain of Custody for Drug Analysis form, dated December 17, 2009; (2) the National Toxicology Laboratories Report, dated December 30, 2009; (3) a memorandum from J. Brown, Senior Officer Specialist, dated March 9, 2010; (4) a memorandum from K. Murry, RN; (5) a memorandum from L. Plank, CMT; and (6) a memorandum from M. Parr, Case Manager.

---

level of offenses ("Low Moderate Category") are listed in Code Nos. 400-499.

[3] This Incident Report, although charging a prison violation that occurred at USP-Big Sandy, on December 17, 2009, was processed at FCI-Ashland because Slater had been transferred to FCI-Ashland on or about December 22, 2009, and prison staff at USP-Big Sandy did not become aware of this incident until December 30, 2009, subsequent to Salter's transfer to FCI-Ashland.

4

The DHO found Slater guilty of violating the BOP Code 112 offense. *See* DHO Report, [R. 1-3, pp. 2-4]. In the section of the DHO Report entitled "Specific Findings of Evidence Relied on Support Guilt," the DHO's report states, in part, as follows:

> Your due process rights were read and reviewed with you by the DHO at the time of the hearing. You stated you understood your rights, had no documentary evidence to present, and requested no witnesses. You further indicated you do not wish to have a staff representative.
>
> The DHO took administrative notice that the incident report was rewritten on January 28, 2010, to correct the date and time staff became aware of this incident. This caused your initial hearing before the UDC to be delayed. This and your transfer to FCI Ashland from USP Big Sandy caused your initial hearing before the Unit Discipline Committee (UDC) to be delayed. The delayed UDC hearing was approved by Warden J. C. Holland. The DHO determined that these delays did not hinder your ability to marshal a defense.
>
> The DHO finds you committed the prohibited act of Use of Narcotics.
>
> The DHO relied upon the written eyewitness account of J. Brown, Senior Officer Specialist, who reports on December 17, 2009, at approximately 11:25 a.m., I notified inmate Slater, Gary #10184-032 that he was to provide a urine sample for drug testing. On December 30, 2009, at approximately 2:10 p.m., I received certification from National Toxicology Laboratories that specimen #BOP00007092825 tested positive for Codeine. Specimen #BOP00007092825 is assigned to inmate Slater #101484-032. USP Big Sandy medical staff informed me that inmate Slater #10184-032 is not prescribed medication that would produce a positive result for these drugs.
>
> . . .

5

> The DHO considered a memorandum from L. Plank, CMT, who reports, on December 22, 2009, at approximately 12:00 p.m., PA S. Bhadra handed me a bag of medication that inmate Slater, Gary #10184-032 handed him down in the Special Housing Unit to identify some medication found in the medication bottles. Inside the Aspirin bottle I found 6 white round tablets with markings of a big 3 on one side and 93 over 150 on the other side. In his Naproxen bottle I found 3 oval white tablets with the markings 93-490. I called FMC Lexington to help identify them and they were identified as Tylenol with Codeine (93 over 150) and Darvocet (93-490). They carry the Tylenol with codeine but do not dispense it the way it was found and they do not carry Darvocet. K. Murry, RN, handed me 1 more Tylenol with Codeine and Darvocet that was also given to him by inmate Slater.
>
> You testified that you were given the medicine by health services staff. However, Nurse Murry reported he delivered the following medication: Naproxen 500 mg, Niacin ER, Aspirin 325 mg and Rantifine 300 mg. He reported that after completing medication on B Range you stopped him and told him somebody messed up your medications. You handed him four pills which were identified [as] Tylenol #3's. Ms. Plank reported that on December 22, 2009, she identified 6 Tylenol #3's and 3 Darvocet. She reported the Bureau does not carry any Darvocet and does not dispense the Tylenol #3 as found. Therefore, the DHO does not give any credibility to your testimony that you were given medication. Based on the positive result for Codeine as reported on the laboratory report, the Chain from [sic] signed by you, and the memorandum indicating a review of your medical record by medical staff found no evidence which would indicate you were prescribed medication which would cause a positive result for Codeine, I find you committed the prohibited act of Use of Narcotics.

*Id.* at pages 2-3.

DHO Mortimer found Slater guilty based on the documentary evidence described above, which was at odds with Slater's testimony that he was given

6

medication with Codeine by medical staff at USP-Big Sandy. The documented evidence reflects that the BOP did not carry any Darvocet and did not dispense the Tylenol #3 (Tylenol with Codeine) that was found in Slater's medication bottles. For these reasons, the DHO gave no credibility to Slater's testimony that the medication with Codeine was dispensed to him by medical staff at USP-Big Sandy. After consideration of all of the evidence described in the DHO report, the DHO found Slater guilty of the Code 112 violation, and imposed the following sanctions: (1) the loss of forty-one (41) days of Good Conduct Time ("GCT") credit on his sentence; (2) 60 days of Disciplinary Segregation, (3) 6 months' loss of Visiting Privileges, followed by 6 months' Immediate Family Members Only Visiting Privileges. The DHO report was delivered to Slater on April 15, 2010.

Slater appealed the conviction and sanctions. The BOP Mid-Atlantic Regional Office ("MARO") denied Slater's appeal, explaining the decision, in part, as follows:

> Policy also provides that staff shall give each inmate charged with violating a Bureau policy, a written copy of the charges against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident. Additionally, each inmate so charged is entitled to an initial hearing before the UDC, ordinarily within three work days from the time staff became aware of the inmate's involvement in the incident. This three work day requirement excludes the day staff became aware of the incident, weekends, and holidays. A review of the record shows that procedural delays in this case were caused by the incident report being rewritten and your transfer to FCI Ashland from USP Big Sandy. The Warden properly approved the

extension of time necessary to administratively process the incident report. You do not provide, nor do we find, any evidence that your due process rights were violated in any way, and we find no reason to elaborate further.

The required discipline procedures were substantially followed, the evidence supports the DHO's finding, and the sanctions were appropriate for the offense.

Remedy ID No. 585954-R4 [R. 1-16].

Slater pursued his appeal to the BOP Central Office, which notified Slater that it needed additional time in which to respond to his appeal, but then did not respond to his appeal. The failure of the Central Office to respond to Slater's appeal is deemed a denial thereof and renders Slater's administrative remedies exhausted.

## 2. Claims Asserted in § 2241 Petition

Summarizing Slater's claims, he contends that the manner in which the BOP charged and convicted him of the Code 112 violation violated his due process rights, requiring a reversal of his conviction, expungement of the Incident Report, restoration of the 41 days of forfeited GTC, and placing him back in the position he enjoyed prior to this conviction. In support of his claimed due process violation, Slater points out the following:

a. prison officials became aware of this alleged violation on December 30, 2009, but that he was not charged in an Incident Report until January 28, 2010, nearly

8

one month later, in violation of 28 C.F.R. 541.15(a), requiring that an inmate be notified of a charge, ordinarily within 24 hours after prison staff become aware of the alleged incident; and,

b. he received the Incident Report on February 1, 2010, but was not taken before the UDC until February 11, 2010, in violation of 28 C.F.R. 541.15(b), which provides that an inmate is entitled to an initial hearing before the UDC, ordinarily within three work days from the time staff becomes aware of the inmate's involvement in the incident.

Slater also claims that his efforts to pursue and exhaust his administrative remedies following his conviction were frustrated by (1) the prison staff's failure to provide him with an appeal form so that he could timely appeal his conviction, (2) MARO's erroneous rejection of three of his four attempts to file an appeal with MARO, and (3) the failure of the BOP's Central Office to respond to his appeal from the MARO decision affirming the DHO decision.

## DISCUSSION/ANALYSIS

A.  *Preparation of and Delivery of Incident Report.*

Slater first alleges that his procedural due process rights were violated because the Incident Report was prepared and delivered to him outside the time-frame prescribed by the regulations. Slater notes that USP-Big Sandy prison staff became

9

aware of this incident on December 30, 2009, but that the Incident Report is dated January 28, 2010, nearly one month later, and was not delivered to him until February 1, 2010. In support of his claim, Slater points to 28 C.F.R. § 541.15(a), which provides:

> Staff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident.

This administrative rule is also set forth in BOP Program Statement 5270.07, Ch. 6, § 1(a). This claim fails as a matter of law for several reasons.

First, the rule requires BOP staff to provide the inmate with a written copy of the charge "**ordinarily** within 24 hours" of the time staff learned of the incident. The rule, by its own terms, therefore permits prison staff to provide a written copy to the inmate more than 24 hours after staff became aware of the incident where circumstances warrant it, such as the prisoner's transfer to another cell block or institution, or other administrative delays which may routinely occur in the operation of a prison. In Slater's case, his transfer to FCI-Ashland in the interim between when the incident occurred at USP-Big Sandy and when USP-Big Sandy staff became aware of this incident resulted in the administrative delay in charging Slater in an Incident Report and processing that charged violation at FCI-Ashland.

10

Second, even were this not so, the requirements of procedural Due Process are defined by the United States Constitution, not by an agency's internal regulations or guidelines. *Sandin v. Conner*, 515 U.S. 472, 485, (1995). Accordingly, an agency's failure to adhere to its own guidelines does not state a Due Process claim. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, (1985); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004).

In the prison context, due process requires that before an inmate is subjected to discipline which increases the duration of his incarceration, he must be informed in writing of the charges against him at least 24 hours before any hearing; be allowed to present evidence in his own defense; be provided a written explanation of the finding and the evidence relied upon in reaching it; and be convicted upon some evidence in support of the charge. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974); *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985). Therefore, the BOP's failure to provide Slater with written notice of the charge within 24 hours *after prison staff became aware of the violation* is not a due process violation. The Due Process Clause is satisfied so long as the inmate receives written notice of the charge within 24 hours *before the hearing*. In Slater's case, he received written notice of the charge more than 24 hours before his UDC hearing. Thus, he has failed to state a due process claim as to the preparation of and delivery of the Incident Report to him.

11

B.   *Timely UDC Hearing.*

Slater next contends that his due process rights were violated because he did not appear before the UDC within 3 working days from the date prison staff became aware of his involvement in the incident. Slater notes that prison staff learned of this incident on December 30, 2009, but that he did not appear before the UDC until February 11, 2010. In support of his claim, Slater points to 28 C.F.R. § 541.15(b), which provides:

> Each inmate so charged is entitled to an initial hearing before the UDC, ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident. This three work day period excludes the day staff became aware of the inmate's involvement in the incident, weekends, and holidays.

This requirement is also set forth in Program Statement 5270.07, Ch. 6, § 1(b). As with Slater's first claim, this claim fails as a matter of both fact and law for several reasons.

First, the section cited by Slater, Section 541.15(b), states that an inmate charged with an offense is entitled to an initial hearing before the UDC, ordinarily to be held within 3 days from the time staff learned of the inmate's involvement in the incident. In Slater's case, as noted above, he appeared before the UDC on February 11, 2010, more than 3 days after prison staff became aware of this incident. As

12

previously stated, prison staff at USP-Big Sandy learned of this incident on December 30, 2009; however, by that time, Slater had been transferred to FCI-Ashland. Thus, it was not possible for Slater appear before the UDC at USP-Big Sandy within 3 days after prison staff knew of this incident, as he was no longer an inmate at USP-Big Sandy at that time. Due to Slater's transfer to FCI-Ashland on or about December 22, 2009, prior to December 30, 2009, when prison staff at USP-Big Sandy learned of this incident, it was necessary to transfer this Incident Report to FCI-Ashland so that this charged violation could be processed there. In short, the timing of Slater's transfer from USP-Big Sandy to FCI-Ashland interrupted the normal processing of this Incident Report, resulting in administrative delay. As noted by the DHO, the Incident Report was rewritten at FCI-Ashland to correct the date when prison staff at FCI-Ashland became aware of the incident.

As with Section 541.15(a), Section 541.15(b) also indicates that an initial UDC hearing should **ordinarily** be held within 3 days; therefore, holding an initial hearing after that period does not necessarily indicate noncompliance with the regulation. Section 541.15(b) does not state that the initial UDC hearing **must** be held within 3 work days, and it does not require dismissal of the charged violation if a UDC hearing is held outside of the 3-day time-frame; it simply specifies that the UDC hearing should **ordinarily** be held within 3 work days. Thus, noncompliance with the time

13

requirements of Section 541.15(b) is not a due process violation, as the requirements of that section are not mandated by the Constitution. Therefore, the BOP's failure to adhere to them fails to state a constitutional claim under the Due Process Clause. *Loudermill*, 470 U.S. at 541. Consequently, Slater has failed to state a due process claim as to the delay in his initial appearance before the UDC.

C.   *Slater's receipt of the DHO report.*

The DHO made a decision on March 29, 2010, and a written copy of the DHO's decision and disposition was provided to Slater on April 15, 2010. Even though, 28 C.F.R. § 541.17(g) requires the DHO to ordinarily give the inmate a written copy of the decision and disposition within ten days of the DHO decision, if a prisoner does not receive the DHO report within ten days of the decision, the prisoner is not entitled to habeas relief, so long as the delay had no prejudicial effect on the prisoner's administrative remedies. *See Mitchell v. Zych*, No. 2:09-CV-12551, 2009 WL 3497796, * 4 (E.D.Mich. 2009), citing *Cook v. Warden, Fort Dix*, 241 Fed. Appx. 828, 829 (3rd Cir.2007). In the present case, the delay in providing the DHO report to Slater had no negative effect on his ability to file and exhaust timely administrative remedies. Slater pursued and exhausted his administrative remedies. Thus, no due process violation occurred with the delay in Slater's receipt of the DHO's report.

D.   *Slater's appeal of the DHO decision.*

Slater's efforts to appeal the DHO decision were frustrated by the failure of prison staff at FCI-Ashland to timely provide him with the form he needed to timely submit his appeal of the DHO decision to MARO, resulting in Slater having to resubmit his appeal to MARO on multiple occasions due to MARO's erroneous rejections of the appeal for various reasons. However, MARO ultimately accepted Slater's appeal and made a decision on the merits. Thus, in the final analysis, there was no due process violation associated with Slater's appeal of the DHO decision to MARO.

Slater pursued his appeal to the BOP's Central Office in Washington, D.C., which first notified Slater that it needed additional time to respond to his appeal, and then failed to respond at all. The lack of response by the Central Office is deemed a denial of the appeal and exhausts the administrative remedy process. Again, there was no due process violation.

E.   *DHO decision based on "some evidence."*

Although Slater told the DHO that he was innocent of the Code 112 offense and testified that he was given the medication with Codeine by USP-Big Sandy health services staff when they gave him his prescribed medication, the DHO gave no

15

credibility to his testimony and based his decision on other documentary evidence, as detailed in the DHO report.

In his § 2241 petition, Slater asserts no claim that his conviction was based on insufficient evidence; he simply claims that his conviction should be reversed and the charge expunged because his constitutional due process rights were violated by the manner in which he was charged and convicted of this offense. For the reasons stated above, Slater's claimed due process violation is without merit.

Pursuant to *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445 (1985), a disciplinary conviction must be upheld as consistent with due process as long as there is "some evidence" to support the decision. *Id*. at 454-55. "Some evidence," as its name suggests, is a lenient standard. *See Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). A district court has no authority under the guise of due process either to review the resolution of factual disputes in a disciplinary decision or to weigh the credibility of the witnesses.

The DHO was not required to find Slater guilty beyond a reasonable doubt as would be the case in a criminal proceeding in a court of law. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539,

556 (1974). The inquiry in cases like this is only whether there was "some" evidence to support a finding of guilt.

To reiterate, Slater stated to the DHO that he was innocent and that he was given the medication with Codeine by USP-Big Sandy health services staff when they gave him his prescribed medication. However, Slater's testimony conflicted with the documentary evidence. Under *Superintendent v. Hill*, the DHO was free to reject Slater's testimony as not credible and instead rely on the documentary evidence and investigative report. A district court merely ensures that the disciplinary decision is not arbitrary and does have evidentiary support. *Superintendent*, 472 U.S. at 457. The investigating officer's report and the documentary evidence constituted "some evidence" upon which the DHO could reasonably rely in finding Slater guilty and imposing the sanctions.

As Slater's disciplinary conviction was supported by "some evidence," his Fifth Amendment due process rights were not violated. The § 2241 petition will be dismissed.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) Petitioner Gary Linsey Slater's 28 U.S.C. § 2241 petition for writ of habeas corpus, [R. 1], is **DENIED**; and,

17

(2) This action will be **DISMISSED**, *sua sponte,* from the docket of the Court, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named Respondent, J.C. Holland, Warden.

This 10th day of May, 2012.

